**E-FILED**
Monday, 03 March, 2008  08:30:03 AM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT OF
THE CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| ORIN KELLY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Cause No.1:08-cv-01052-MMM |
| | ) | Division No. |
| | ) | |
| ILLINOIS CENTRAL RAILROAD | ) | |
| COMPANY d/b/a CANADIAN | ) | |
| NATIONAL/ILLINOIS CENTRAL | ) | |
| RAILROAD COMPANY | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

### PLAINTIFF'S INTERROGATORIES
### DIRECTED TO DEFENDANT

COMES NOW plaintiff, Orin Kelly, by and through his attorneys, Rathmann & O'Brien, L.L.C., pursuant to the Rules of Civil Procedure and propounds the following Interrogatories to Defendant, to be answered in writing, under oath, within the time provided:

1.    Please state the date that plaintiff was first employed by defendant and set forth all periods of plaintiff's absences from work (other than rest days, vacation and holidays).

**ANSWER:**

2.    For each pre-employment physical examination, return to work physical examination, special examination or any other employment related physical examination or evaluation of plaintiff while plaintiff was employed by defendant state:

1

pamphlets, books, interoffice and intra-office communications, notations of any conversations (including, without limitation, telephone calls, meetings, and other communications), bulletins, printed worksheets, graphic or oral records or representations of any kind (including, without limitation, photographs, charts, graphs, microfiche, microfilm, videotapes, recordings and motion pictures), electronic, mechanical or electric records or representations of any kind (including, without limitation, tapes, cassettes, discs, recordings and computer memories), and all drafts. A draft or non-identical copy qualifies as a separate document under this term.

B.    The terms "you", "your", "defendant", refer to, and to any agent, employee, representative, or other natural persons, firms, corporation, partnership, associations, organizations, joint venture, or group of natural persons subject to The Union Pacific Railroad Company;

C.    The terms "you" and "your" when used refer to the defendant and each of its subsidiaries, divisions, affiliated corporations or entities, includes all employees and agents of any such corporation, subsidiary, division or entity.

D.    "Or" is both conjunctive or disjunctive, and singular indicates the plural and the plural indicates the singular, except as the context may otherwise unambiguously require.

2

## REQUESTS

1.  All written statements, memorandum or oral statements, or court reporter statements taken of the plaintiff regarding the underlying injuries and/or lawsuit. This includes signed or unsigned written statements, court reporter statements, statements on records, tapes or discs, or memorandum of statements in any form.

2.  All written statements, memorandum or oral statements, or court reporter statements taken of any witness or other persons having knowledge of facts relevant to the action alleged in plaintiff's Complaint. This includes signed or unsigned written statements, court reporter statements, statements on records, tapes, or discs, or memorandum of statements in any form.

3.  All pay records of plaintiff kept by the defendant for the ten (10) years prior to the date plaintiffs Complaint was filed.

4.  The entire personnel file and/or the personal file of plaintiff kept by the defendant.

5.  The entire medical director's file of plaintiff kept by the defendant.

6.  The entire rehabilitation (vocational and otherwise) file of plaintiff kept by the defendant.

7.  All documents, reports, logs or other materials in the possession of defendant which are required to be kept by the Federal Railroad Administration or other government agency pertaining to the incidents which are the subject of this cause of action.

8.  All photographs or motion pictures taken of the plaintiff subsequent to the incidents alleged in plaintiff's Complaint.

9.  Any medical or hospital records or reports concerning plaintiff which are in the possession of the defendant, its agents or representatives.

10. Any documents or medical records in possession of defendant from any expert witness whom defendant intends to call as an expert at trial.

11. A copy of any document giving a job description for the job of engineer, any physical requirements for the job of engineer, or any medical standards for the

3

job of engineer which list, outline, describe or otherwise indicate the job expectations, job responsibilities, or physical and medical requirements of the plaintiff in effect from 1995 to the present. Plaintiff requests such documents whether or not they were or have been superseded and whether or not they were or are considered final by you.

12.     All documentation, including "drafts" or non-final versions of documents describing the physical restrictions Defendant imposed upon Plaintiff with regard to Plaintiff performing work of his craft within three (3) years prior to the date of plaintiffs Complaint.

13.     Any and all documentation setting forth and describing any physical restrictions or limitations defendant has authorized for plaintiff after he was injured as alleged in the Complaint.

14.     A copy of any manuals or other writings provided by you to any doctors performing pre-employment, pre-placement or return-to-work physical within the last three (3) years which contain any description of:

　　　　　　1.     The job duties or physical requirements for the job of engineer;

　　　　　　2.     A list or description of any physical conditions or attributes that should be noted or observed by such doctors;

　　　　　　3.     A list of any physical qualifications for the job of brakeman and engineer;

　　　　　　4.     A list of any conditions which disqualify a person for a job;

　　　　　　5.     The type or nature of findings or conditions that would disqualify such persons from employment with the railroad generally.

　　　　　　6.     Plaintiff requests such documents whether or not they were or have been superseded and whether or not they were or are considered final by you.

15.     All stenographic, mechanical, electrical, audio, video, motion picture, photograph or other recording of plaintiff or surveillance of plaintiff.

4

16. A copy of any rules, memoranda, instructions, call histories, timetables, slow orders, restricted speed track warrants, track bulletins, track warrants or other tangible items which communicated any warnings or information to plaintiff regarding unstable or defective locomotive seats, locomotive cabs, locomotive suspensions or rough track conditions on or prior to the incident alleged in plaintiff's Complaint.

17. A copy of any records, notes or minutes from any safety meetings with plaintiffs craft within three (3) years prior to the date of plaintiff's Complaint.

18. Copies of any recommendations, standards, specifications, or regulations pertaining to inspections of locomotive seats, locomotive cabs, locomotive suspensions or rough track from the manufacturer/seller/maintainer of locomotive seats, locomotive cabs, locomotive suspensions or regarding rough track, from the FRA, the AAR or OSHA.

19. Any training manuals, books, texts, brochures, posters, pamphlets, videotapes, movies, slide presentations and film strips defendant has used to train its employees about inspecting the suspension system of locomotives, switches, locomotive seats, soft spots, or dangerous track conditions during plaintiff's employment with defendant.

20. Any and all reports of any pre-employment or other physical examinations of plaintiff while plaintiff was employed by defendant(s).

21. All reports of any inspections performed by defendant of locomotive seats, locomotive cabs, locomotive suspensions or rough track during the twenty-five (25) years prior to plaintiff's Complaint up to and including the present dates, excluding inspections done at the request of counsel.

22. All reports, documents, notes or other materials which contain information from any of defendant's employees advising defendant, its foremen, or supervisors, of problems with the locomotive suspensions or seats and cabs in locomotives or claims that locomotives rode rough or had excessive lateral motion, or problems with track conditions the twenty-five (25) years prior to plaintiff's Complaint.

23. Representative diagrams, drawings or blueprints of each of the locomotives and locomotive seats, locomotive suspensions, locomotive cabs and switches utilized by the defendant from 1995 to the present.

24. All letters, memoranda, summaries, e-mails, facsimiles or other documents referring to:

   a. Rehabilitation or internal placement concerning the plaintiff;

   b. Potential offers of jobs to plaintiff or potential interviews of plaintiff; and

   c. Any discipline or the possibility of issuing discipline, or the possibility of any disciplinary hearings regarding plaintiff at any time after the date of the alleged injuries.

25. Regarding the defendant's medical care management program ("program" for purposes of this request), produce the following documents:

   (a) All management-level documents referring or pertaining to the development, use, utility, or operation of the "program" before it was implemented or put into use by you;

   (b) All documents which you received from any outside source referring or pertaining to the development, use, utility, or operation of medical rehabilitation services or substantially similar program(s) including, but not limited to, documents from other railroads, the AAR, the FRA, seminar or conference sponsors, or any claims, human resources, human factors or medical/vocational rehabilitation organizations;

   (c) All documents which were developed for the "program" which refer or pertain to ERISA including but not limited to Summary Plan Descriptions;

   (d) All management-level documents referring or pertaining to the development, use, utility, or operation of the "program" after it was implemented or put into use by you;

   (e) All documents which you received from any outside source referring or pertaining to the development, use, utility, or operation of the "program" into use including, but not limited to, documents from other railroads, the AAR, the FRA, seminar or conference sponsors, or any claims, human resources, human factors or medical/vocational rehabilitation organization;

6

(f)    All statistical analyses conducted which refer or pertain to any aspect to the "program" including, but not limited to, its utility, the costs/benefits of the "program," its use by employees, its effect on work-related FELA litigation or its effect on lost man hours due to work-related or non-work related injuries or disabilities;

(g)    All management-level documents referring or pertaining to any statistical analysis identified in subparagraph (f);

(h)    All procedure manuals, instructions, directives, protocols, guidelines, or other documents referring or pertaining to the operation of the "program" which are used or are available for use by any of your agents or servants;

(i)    All documents which refer or pertain to differences in the "program," if any, when an injury or disability is work-related rather than non-work-related;

(j)    A chart showing your organizational structure related to the operation of the "program;" and

(k)    all documents which refer or pertain to meetings, conferences, or discussions regarding participation of the Plaintiff in the "program" related to the incident and injuries alleged in the Complaint or employee complaints regarding defective locomotive seats.

26.    Regarding your vocational rehabilitation program ("program") for purposes of this specific request), produce the following documents:

(a)    All management-level documents referring or pertaining to the development, use, utility or operation of the "program" before it was implemented or put into use by you;

(b)    All documents which you received from any outside source referring or pertaining to the development, use, utility, or operation of medical rehabilitation services or substantially similar program(s) including, but not limited to, documents from other railroads, the AAR, the FRA, seminar or conference sponsors, or any claims, human resources, human factors or medical/vocational rehabilitation organizations;

(c)    All documents which were developed for the "program" which refer or pertain to ERISA including but not limited to Summary Plan Descriptions;

7

(d)    All management-level documents referring or pertaining to the development, use, utility, or operation of the "program" after it was implemented or put into use by you;

(e)    All documents which you received from any outside source referring or pertaining to the development, use, utility, or operation of the "program" into use including, but not limited to, documents from other railroads, the AAR, the FRA, seminar or conference sponsors, or any claims, human resources, human factors or medical/vocational rehabilitation organization;

(f)    All statistical analyses conducted which refer or pertain to any aspect to the "program" including, but not limited to, its utility, the costs/benefits of the "program," its use by employees, its effect on work-related FELA litigation or its effect on lost man hours due to work-related or non-work related injuries or disabilities;

(g)    All management-level documents referring or pertaining to any statistical analysis identified in subparagraph (f);

(h)    All procedure manuals, instructions, directives, protocols, guidelines, or other documents referring to pertaining to the operation of the "program" which are used or are available for use by any of your agents or servants;

(s)    All documents which refer or pertain to differences in the "program", if any, when an injury or disability is work-related rather than non-work-related;

(t)    A chart showing your organizational structure related to the operation of the "program"; and

(u)    All documents which refer or pertain to meetings, conferences, or discussions regarding participation of the Plaintiff in the "program" related to the incident and injuries alleged in the Complaint.

27.    All documents, photographs, charts, graphs, or videotapes referring or pertaining to tests, studies, measurements or evaluations conducted, performed or obtained by the defendant, or any entity acting on its behalf, of the forces or environmental conditions experienced by brakeman and conductors for the 365 day period before the plaintiff reported his personal injuries alleged in the Complaint through the present.

28.    All notes, memoranda, documents referring or pertaining to runs conducted with railroad officials or management after the plaintiff reported his personal injuries alleged in the Complaint.

8

29.    All policies, rules or procedures related to the issuance and/or removal of slow orders for track which would have been in effect at any time during the one (1) years period prior to the date of the plaintiff's injuries alleged in the Complaint through the present.

30.    All geometry car readings or track measurement car strip charts related to the track obtained or generated during the one (1) year period prior to the filing of plaintiff's Complaint through to the present.

31.    All self-critical analyses prepared by the defendant related to the injuries the plaintiff's Complaint, or any other substantially similar injuries alleged to have occurred within the three (3) year period before the injuries alleged in the Complaint through the present.

32.    All directives, instructions, rules, orders, or other documents issued by or at the direction of any engineer, or any other railroad official or manager, in the normal course of his, or their, duties during the three (3) year period prior to plaintiff's Complaint through the present referring or pertaining to track inspection, maintenance or repair.

33.    All performance appraisals and performance improvement plans prepared or authorized by a engineer related to roadmasters and track inspectors performing work any time during the three (3) year period prior to the injuries alleged in the Complaint through the present.

34.    All plans, and written status reports submitted at review sessions, for completing all required maintenance, repair or evaluation activities related to track for the one (1) year period before the date plaintiff's Complaint was filed through the present, including, but not limited to, gopher undercutter locations, surfacing gang plans, and regularly scheduled maintenance and inspection of switches, main tracks, sidings and back tracks.

35.    All tasks lists prepared during or following rides with the Patrol Gangs identifying exceptions including, but not limited to, Roadmaster Inspection Audit Checklists, documentation of gang involvement, and documentation as to handling and method of follow-up related to inspections of track for the one (1) year period prior to the date of plaintiff's Complaint.

36.    All minutes, notes, memoranda, or other documents prepared or related to all division engineers weekly meetings conducted during the one (1) year period

9

prior to the filing of the Complaint through the present, including, but not limited to, target due dates and the manpower requirements.

37. All agreements between the defendant and any other entity related to maintenance to or inspections of locomotives from 1971 to the present which would have been in effect in 2001, 2002, 2003 and 2004 to the present.

38. Any rules, memoranda, superintendent's notices or orders, or other tangible items which communicated a warning to the plaintiff regarding any risks potentially associated with cab seats, cab compartments, locomotive suspensions, lateral motion or whole-body vibration related to the operation of your locomotives and the operation of switches.

39. All reports of studies or analyses of (i) the ride quality or suspension systems of locomotives substantially similar to those used by the plaintiff under substantially similar conditions; or (ii) the effects of whole-body vibration related to the operation of locomotives substantially similar to those used by the plaintiff under substantially similar conditions; or (iii) cab seating in locomotives substantially similar to those used by the plaintiff under substantially similar conditions; or (iv) track conditions over which the plaintiff ran during his employment, and all management-level memoranda, e-mails, or other documents prepared or generated after review or evaluation of the studies or analyses.

40. All written advice, warnings, claims, contentions, documents, recordings, e-mails, reports or other tangible items referring or pertaining to a personal injury risk related to (i) the ride quality or suspension systems of locomotives substantially similar to those used by the plaintiff under substantially similar conditions; or (ii) the effects of whole-body vibration related to the operation of locomotives substantially similar to those used by plaintiff under substantially similar conditions; or (iii) cab seating in locomotives substantially similar to those used by plaintiff under substantially similar conditions; or (iv) rough, dangerous or deficient track conditions received by you during the past twenty-five (25) years from employees, union officials, the EMD Division of General Motors, General Electric, the FRA, the Volpe Research Center, or any other third-party, and all management-level memoranda, e-mails, or other documents prepared or generated after review or evaluation of such.

41. A list by style and date all lawsuits or claims where any employee claimed personal injury related to (i) the ride quality of any of you locomotives; or (ii) whole-body vibration from any of your locomotives; or (iii) rough, dangerous,

10

or deficient track conditions (NOTE: REGARDING CLAIMS, INFORMATION IDENTIFYING THE CLAIMANT SHOULD BE REDACTED ON PRIVACY GROUNDS.)

42. All reports, documents, maintenance records, notes or other tangible items pertaining to locomotive seats, locomotive cabs and locomotive suspensions that the plaintiff used for the past thirty seven (37) years relating to its mechanical condition at the completion of his runs, and its mechanical condition during the past thirty seven (37) years.

43. All drawings, specifications, e-mails, reports, or other written documents pertaining to mechanical modification to the suspension system of any EMD or General Electric locomotive in your fleet at any location

44. All correspondence, memoranda, e-mails, or other written documents forwarded to or received from EMD or General Electric, or any individual acting for or on their behalf, pertaining to mechanical modification to the locomotive suspension system, locomotive seat or locomotive cab of any EMD or General Electric locomotive, the ride quality of any EMD or general Electric locomotive, whole-body vibration, or track conditions over which your locomotives operate.

45. All correspondence, memoranda, e-mails, or other written documents pertaining to the replacement of locomotive cab seating at certain time intervals, the quality of cab seating, or the potential for personal injury caused by certain types of cab seating used in your fleet.

46. All accelerometer test results or reports for any EMD or General Electric locomotive and all management-level memoranda, e-mails, or other documents prepared or generated after review or evaluation of the test results or reports.

47. All reports, e-mails, correspondence, or other written documents concerning studies performed or underway by the Volpe Research Center in Denver, Colorado related to locomotive ride quality or whole-body vibration and all management-level memoranda, e-mails, reports, or other documents prepared or generated after review or evaluation.

48. All correspondence, memoranda, e-mails, or other written documents forwarded to or received from the Federal Railroad Administration or the Association of American Railroads pertaining to mechanical modification to the suspension system or locomotive seat of any model locomotive currently in use, the ride quality of any locomotive currently in use, or whole-body vibration. (NOTE: THIS REQUEST DOES NOT SEEK PRODUCTION OF REPORTS OF PERSONAL INJURY SENT TO THE FRA PURSUANT TO FEDERAL LAW).

11

49.     All superintendent's notices, orders, rules or other written documents relating to the ride quality of your locomotives, lateral motion related to the operation of your locomotives, or whole-body vibration which would have been issued at any time during the past twenty-five (25) years, and all management-level communications, reports, e-mails, or other written documents concerning any change in policies or procedures in these regards.

50.     All written notices concerning policies or programs instituted by you during the past twenty (20) years relating to the reduction of exposure to excessive lateral motion or whole-body vibration during operation of any locomotives in your fleet substantially similar to any of those that were used by the plaintiff.

51.     A copy of any records, notes or minutes from any safety meetings conducted by you in any service unit or division in which the plaintiff worked, related to locomotive ride quality, excessive lateral motion, or whole-body vibration during the period of the plaintiff's employment.

52.     Any training manuals, books, texts, brochures, posters, pamphlets, videotapes, movies, slide presentations, film strips or other tangible items that you have used to train or educate your employees regarding any potential dangers associated with ride quality, whole-body vibration, or lateral motion related to the operation of your locomotives from 1972 to the present.

53.     All reports, correspondence, e-mails, graphs, charts, or other documents concerning inspections of track conducted by representatives of the FRA between 1972 to the present including, but not limited to, slow orders issued as a result of these inspections, any other orders, directives, or between officials employed by the defendant discussing these inspections, and all orders, directives or instructions issued by any Division engineer or any other representative for the defendant to inspect or repair any specific section of track.

54.     Regarding each of these categories of locomotives in your fleet - **GE Dash 7s and Dash 8s, GM Dash-2s, SM SD60s and SD 75Ms. GM SD75MIs, GM SD70MAC, GE Dash 9-44CWs, and GE AC4400CWs -** the following documents:

        (a)     Records of complaints (including injury reports) by crews of rough riding characteristics;

        (b)     Ride quality tests conducted on the above model locomotives conducted either by you the defendant, the locomotive manufacturer, or outside contractors;

12

(c)    Comparative ride quality tests conducted comparing the above model locomotives to other locomotives or other classes of vehicles conducted by the defendant, the locomotive manufacturer, or outside contractors;

(d)    Identification of the types of seats used in the cabs, types of cabs of the above model locomotives;

(e)    Maintenance instructions for the types of seats identified in subsection (d);

(f)    Qualification test requirements for the types of seats identified in subsection (d);

(g)    Test results for tests conducted by or for the defendant on the types of seats identified in subsection (d) when tested for shock and/or vibration damping quality;

(h)    Test results for experimental seats evaluated by the defendant, the Illinois Central Railroad Company including, but not limited to, air ride seats (i.e., Isringhausen seats) and USSC Model 9002 seats;

(i)    Documents referring or pertaining to ergonomic considerations made by the defendant when specifying the cabs and cab equipment to be used on its locomotives;

(j)    Documents referring or pertaining to ergonomic considerations made by the defendant when specifying the cabs and cab equipment to be used on its locomotives;

(k)    Documents adequate to identify the transmissions (AC or DC) used on the above model locomotives;

(l)    Documents adequate to identify those model locomotives equipped with isolated cabs;

(m)    The full Locomotive Service Manual for the above model locomotives;

(n)    Copies of the Operator's Manual for the above model locomotives;

13

(o)     Copies of the Maintenance Instructions for the trucks on the above model locomotives'

(p)     Copies of instructions for modifications to the trucks on the above model locomotives;

(q)     Copies of the modification instructions for isolated caves used on the above model locomotives'

(r)     Copies of modification instructions for the electrical control systems on the above model locomotives equipped with AC transmissions;

(s)     General Arrangement drawings of the above model locomotives;

(t)     Cab Arrangement drawings of the above model locomotives;

(u)     Documents adequate to determine the weights of the main components of the above model cabs (engine, generator, traction motors, trucks, cabs, etc.);

(v)     Documents referring or pertaining to the initiation or cessation of modification to or alteration of the tracks, suspension systems, or locomotive seats of any of the above model locomotives at any of your shops; and

(w)     Documents which describe, discuss, or explain the reasons for the initiation and cessation of modification to or alteration of the tracks, suspension systems, or locomotive seats of any of the above model locomotives at any of your shops. (**NOTE:** This subpart seeks the rationale for the performance and termination of such work, as applicable, rather than directives to any individual to either perform or terminate such work).

\*   \*   \*   \*

**NOTE: If Defendant contends that any documents requested are privileged from disclosure, Defendant is requested to provide a privilege document log, which adequately describes the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing the information itself privileged or protected, will enable the Plaintiff to assess the applicability of the privilege or protection claimed including, but not limited to, a**

14

brief description or summary of the contents of the document, the date the document was prepared, the person or persons who prepared the document, the persons to whom the document was directed, or for whom the document was prepared, the purpose in preparing the document, the privilege or privileges asserted with respect to the document, and how each element of the privilege is met as to that document

RATHMANN & O'BRIEN, L.L.C.

PATRICK S. O'BRIEN #3127549
1031 Lami Street
St. Louis, MO 63101
(314) 773-3456 Telephone
(314) 773-7238 Facsimile
Attorneys for Plaintiff

15

IN THE UNITED STATES DISTRICT COURT OF
THE CENTRAL DISTRICT OF ILLINOIS

ORIN KELLY,                                          )
                                                     )
        Plaintiff,                                   )
                                                     )
vs.                                                  )        Cause No. 1:08-cv-01052-MMM
                                                     )        Division No.
                                                     )
ILLINOIS CENTRAL RAILROAD                            )
COMPANY d/b/a CANADIAN                               )
NATIONAL/ILLINOIS CENTRAL                            )
RAILROAD COMPANY                                     )
                                                     )
                                                     )
        Defendant.                                   )

## PLAINTIFF'S  REQUEST FOR  PRODUCTION
## TO DEFENDANT

COMES NOW plaintiff, Orin Kelly, by and through his attorneys Rathmann &

O'Brien, L.L.C. and hereby requests defendant produce copies of documents and materials:

### DEFINITIONS

A.      The terms "document" or "documents" means all writings of any kind,

including, without limitation, the originals and all non-identical copies, whether different

from the originals by reason of any notation made on such copies or otherwise including,

without limitation, correspondence, memoranda, notes, diaries, statistics, letters, telegrams,

minutes, contracts, reports, studies, checks, statements, receipts, returns, summaries,

pamphlets, books, interoffice and intra-office communications, notations of any

conversations (including, without limitation, telephone calls, meetings, and other

1

examination, special examination or any other employment related physical examination or evaluation of plaintiff while plaintiff was employed by defendant state:

        (a)    The name and address of the physician performing the examination; and

        (b)    The date of the examination.

**ANSWER:**


3.    Set forth and describe the physical restrictions, if any, defendant imposed upon plaintiff with regard to plaintiff performing work of plaintiff's craft within three (3) years prior to the date of Plaintiff's Complaint.

**ANSWER:**


4.    Did defendant impose any physical limitations or restrictions upon plaintiff with regard to plaintiff performing the work of plaintiff's craft for defendant at any time after the date of Plaintiff's Complaint?

        If so, set forth in detail and to the best of defendant's ability the nature of and content of the limitations or restrictions and when they were in effect.

**ANSWER:**

2

5.    Do defendant's records indicate that plaintiff ever sustained injuries while employed by defendant?

        If so, state the following:

(a)    The date or dates of the injuries.

(b)    The nature of the injuries.

(c)    Did defendant authorize or permit plaintiff to return to work subsequent to the injuries?

        If so, state the following:

(1)    The names and address of the persons who participated in making the decisions permitting or authorizing plaintiff to return to work.

(2)    The date or dates the permission or authorization was given.

(3)    Are there any documents with regard thereto?

        If so, state:

(A)    State the name and address of the person having possession, custody or control of those documents.

**ANSWER:**

6.    Please set forth and describe any disability, injury, illness, disease or symptomatology plaintiff experienced while employed by defendant.

3

**ANSWER:**

7.    Identify by name and address the physicians, chiropractors, clinics, hospitals and/or medical care providers from whom defendant has received any reports, writings, written correspondence or memoranda regarding any examinations or treatment concerning this plaintiff.

**ANSWER:**

8.    State the name and address of plaintiff's direct foreman or supervisor during the three (3) years prior to the date of Plaintiff's Complaint.

**ANSWER:**

9.    Have any motion pictures, videotapes recordings or photographs of plaintiff been taken by you or anyone acting on your behalf? If so, state for each:

    (a)    The dates(s) each photograph, videotape recording or motion picture was taken;

    (b)    The name and address of each person taking the photograph, videotape recording or motion picture;

4

(c)    The location where each photograph, videotape recording or motion picture was taken; and

(d)    The present location of each photograph, videotape recording or motion picture.

**ANSWER:**

10.    Identify all persons who have followed and in any way conducted surveillance of the plaintiff on behalf of the defendant.  For each such person:

(a)    State the name and address of the person;

(b)    State under whose direction the person was acting; and

(c)    State the date and location where the surveillance was conducted.

**ANSWER:**

11.    State the names, addresses and occupations of any and all individuals known to defendant, its representatives, or its attorneys, to have worked with plaintiff during his career with defendant.

**ANSWER:**

12.    Describe in detail and to the best of defendant's ability the work or employment duties that defendant assigned plaintiff to perform.

Also, state the following:

(a)    Does defendant have any documents setting forth those assigned duties?

(1)    If so, state the name and address of the person having possession of those documents.

**ANSWER:**

13.    If defendant communicated any warning to plaintiff about the danger of cumulative trauma injuries describe in detail and to the best of this defendant's ability the content of such warning and the name of the person who communicated the warning to Plaintiff.

**ANSWER:**

14.    During the three (3) years prior to the date of Plaintiff's Complaint, did defendant hold or conduct any safety meetings with members of plaintiff's craft or on the territory he was assigned to.

6

(a)    If your answer is yes, does defendant have any records, minutes or notes pertaining to those meetings?

     (1)    If so, state the name and address of the person having possession of those records, minutes or notes.

**ANSWER:**

15.    During the three (3) years prior to the date of Plaintiff's Complaint, did defendant perform any routine safety audits or routine safety inspections with regard to cumulative trauma injuries to members of plaintiff's craft?

     If your answer is yes:

(a)    State the names and addresses of the persons who performed those safety audits or inspections; and

(b)    Identify by title the reports prepared as a result of those routine safety audits and routine safety inspections and state the name and address of the person who has custody of those audits or inspections.

**ANSWER:**

16.    State the name and address of the person who assigned plaintiff to perform any and all tasks that he was engaged in during the three (3) years prior to the date of Plaintiff's

Complaint

**ANSWER:**


17.    During the three (3) years immediately prior to the date of Plaintiff's Complaint had any of defendant's employees advised defendant, its foremen or supervisors, of any hazards associated with cumulative trauma injuries to members of plaintiff's craft?

If so, state the following:

(a)    The names and addresses of the person so informing defendant, its foremen or supervisors;

(b)    The date or approximate date defendant, its foreman or supervisors, were so informed;

(c)    The names of the foremen and supervisors so informed;

(d)    Are there any documents with regard thereto?

**ANSWER:**


18.    Please identify by name, address, occupation, place of employment and qualifications of all experts retained to give an opinion, or if such information is available on the expert's curriculum vitae, attach same, regarding each person you expect to call as an expert witness at the trial of this matter and state the general nature of the subject matter on

8

which each expert is expected to testify and the expert's hourly deposition fee, note this includes any lay or non-retained experts including a party.

**ANSWER:**

19.    Prior to the alleged occurrence, had defendant received any recommendations, standards, specifications or regulations pertaining to prevention of cumulative trauma injuries from the FRA, the AAR or OSHA?

If your answer is yes, identify the recommendations, standards, specifications and regulations by number and/or title and state the name of the defendant's employees who has custody of those documents.

**ANSWER:**

20.    State the name and address of all employees of or consultants to the defendant who participated in or reviewed any decision concerning whether plaintiff should be allowed to return to work for the Defendant with or without restrictions on plaintiff's physical activities or job assignments.

**ANSWER:**

21.    State the name and address of defendant's employees who have custody of each

9

of the following:

      (a)    Defendant's personnel file concerning plaintiff;

      (b)    Defendant's personal file concerning plaintiff;

      (c)    Defendant's earning records concerning plaintiff;

      (d)    Defendant's medical director's file concerning plaintiff;

      (e)    Defendant's vocational rehabilitation file concerning plaintiff.

**ANSWER:**

22.    Set forth the titles of the training manuals, books, texts, brochures, posters, pamphlets, videotapes, movies, slide presentations and film strips defendant has used to train its employees about cumulative trauma injuries during plaintiff's employment with defendant and state the name and address of the person having custody of each such item.

**ANSWER:**

23.    State the name, address, phone number, employer and job title of all persons having knowledge of the facts which form the basis of plaintiff's claim or relating to his injuries or damages or any of defendant's defenses.

**ANSWER:**

10

24.     State whether the defendant is sued in its full and correct name. If not, please state the full and correct name of the defendant.

      **ANSWER:**

25.     State the total wages or earnings of the three persons listed above and below the plaintiff on the applicable seniority roster for the three years prior to the date of Plaintiff's Complaint up through the present date.

      **ANSWER:**

26.     State whether you or anyone acting on your behalf is in possession of or have obtained any statements from anyone who witnessed the occurrence mentioned in plaintiff's Complaint or who has any knowledge concerning the incident or the injuries or disabilities suffered by plaintiff.  With respect to each statement provide the following information:

      (a)     The name and address of each person from whom a statement was taken;

      (b)     The date the statement was taken;

    (c)    The name and address of the person who took or obtained the statement; and

    (d)    Whether the statement was oral, written or recorded and, if written or recorded, the name and address of the person having custody of the statement.

**ANSWER**:

27.    With respect to plaintiff, please state the following:

    (a)    The total amount of Productivity Fund payments to plaintiff each year for the last three years payments were made;

    (b)    The total amount of Tier I taxes paid by the defendant to the Railroad Retirement Board on behalf of plaintiff each year for the last three years payments were made;

    (c)    The total amount of Tier II taxes paid by the defendant to the Railroad Retirement Board on behalf of plaintiff each year for the last three years payments were made;

    (d)    The yearly premiums and the face value of any life insurance and accidental death or dismemberment insurance policies on plaintiff which were paid by defendant for the last three years;

    (e)    The yearly premiums and the fact value of any disability insurance

12

policy on plaintiff which were paid by defendant for the last three years;

(f)     The yearly amount paid by defendant for plaintiff's health and dental care insurance or coverage for the last three years;

(g)     The yearly amount paid by defendant for plaintiff's dependent health and dental care insurance or coverage for the last three years;

(h)     The hourly or daily wage rate as well as any supplemental or special wages or allowances which defendant paid to plaintiff for the last three years;

(i)     If plaintiff is not currently working for defendant, the hourly or daily wage rate as well as any supplemental or special wages or allowances during the past three years had he worked for defendant;

(j)     The amount of any scheduled increases in the hourly or daily wage or the amount of any scheduled increases in the cost of fringe benefits for members of plaintiff's craft in the next two years;

(k)     The amount of any RRB, SSB, insurance, wage continuation, advancements or other payments which defendant claims as a lien or offset against any settlement or judgment in this case.

**ANSWER:**

13

28. State whether plaintiff was formally charged with a violation of a rule, order or directive concerning the claims set forth in plaintiff's Complaint and, if so, state:

    (a)    The date of the charge;

    (b)    The rules, orders or directives allegedly violated;

    (c)    The date and location of each investigation or hearing concerning the violation;

    (d)    Whether a transcript was prepared of any such investigation or hearing;

    (e)    Whether any discipline was assessed against plaintiff as a result of the violation; and

    (f)    The nature of the discipline so assessed.

**ANSWER:**

29. State the name, address, employer and job title or position of the person signing the answers to these interrogatories on behalf of defendant.

**ANSWER:**

RATHMANN & O'BRIEN, L.L.C.

14

PATRICK S. O'BRIEN #3127549
1031 Lami Street
St. Louis, Missouri  63104
(314) 773-3456 Telephone
(314) 773-7238 Facsimile
**Attorneys for Plaintiff**

15