UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| ORIN K. KELLY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 08-1052 |
| ) | |
| ILLINOIS CENTRAL RAILROAD COMPANY ) | |
| d/b/a CANADIAN NATIONAL/ILLINOIS ) | |
| CENTRAL RAILROAD COMPANY, ) | |
| ) | |
| Defendant. ) | |

# O R D E R

This matter is now before the Court on Plaintiff's Motion to Reconsider the Court's Order of January 12, 2010, Excluding Treating Physicians from Giving Specific Causation Opinions and Defendant's Motion to Reconsider the Court's Order of January 12, 2010. For the reasons set forth below, Plaintiff's Motion to Reconsider [#58] is GRANTED, and Defendant's Motion to Reconsider [#56] is DENIED.

### DISCUSSION

"Motions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." <u>Caisse Nationale de Credit v. CBI Industries</u>, 90 F.3d 1264, 1269 (7th Cir. 1996). Furthermore, it is not appropriate to argue matters that could have been raised in prior motions or rehash previously rejected arguments in a motion to reconsider. <u>Id.</u> at 1270.

Plaintiff's Motion to Reconsider is really an effort to make the more detailed offer of proof regarding the knowledge and experience of his treating physicians invited by the

Court in ruling on the Motion for Summary Judgment. The Court previously found that the expert causation opinions that Kelly wishes to introduce though Drs. Schoedinger and McMullin were lacking sufficient factual basis, which consequently undermines the reliability of the principles or methods upon which their testimony is based.

Plaintiff has submitted the Affidavit of Dr. Schoedinger, in which Dr. Schoedinger clarifies that through the histories provided to him by numerous railroad brakemen/conductor employees, he has "obtained a thorough understanding of the daily employment tasks these employees perform." (Schoedinger Affidavit at ¶ 4) He has reviewed the job description for a conductor employed by Defendant and is aware that the work requires operating track switches and derails to move segments of track, applying handbrakes, frequently lifting/carrying up to 50 pounds, occasionally lifting/carrying up to 100 pounds, walking on uneven ground, mounting/dismounting stationary and moving equipment, and working for prolonged periods of time. Id. Furthermore, the frequency and duration of the tasks varies from day to day according to the work load. Id.

After reviewing Plaintiff's deposition, Dr. Schoedinger now understands that Plaintiff has worked his entire career at the railroad as a switchman/brakeman/conductor in Illinois, generally working 10-12 hours per day, six days per week. Id., at ¶ 5. His work was split evenly between road work and yard work, with the work in the yard being more physically demanding. Id. He was constantly walking, throwing switches and pulling pins, as well as performing his tasks as set forth in the conductor's job description. Id. Plaintiff walked on oversized ballast, threw switches that were hard to operate manually, and sometimes had to "slip and slide" in the mud to perform his tasks. Id. He also sat on locomotive seats that were bolted to the wall without any shock absorption and inadequate lumbar support. Id.

With respect to Plaintiff's 1991 work-related injury, Dr. Schoedinger has reviewed the pertinent medical records and is aware that Plaintiff was examined and deemed medically qualified to return to work without restrictions. Id. In fact, Plaintiff was able to continue his work for the railroad without restrictions until mid-2006. Id. He has reviewed Plaintiff's records for medical treatment, as well as documents from his railroad medical and personnel files. Id., at 6. These records include lumbar spine x-ray reports from 1985 and 1991, a lumbar CT scan and myelogram from 1991, treatment notes regarding his 1991 injury, treatment notes from his subsequent chiropractic treatment, railroad medical file records, and personnel records. Id. From this, Dr. Schoedinger has concluded that in 1985, Plaintiff's condition revealed a normal degenerative process seen with aging, and he was deemed physically qualified by Defendant's medical department to continue in his position. Id., at 7.

His 1991 injury resulted in a herniated disc at L4-5 superimposed on premature degenerative disc disease at the L3-4, L4-5, and L5-S1 levels. Id. However, following his treatment, he was again deemed physically qualified to continue his work without restrictions by Defendant's medical department. Id. In 1999, Plaintiff suffered a groin strain on the job after slipping in the mud while stepping over a rail, but he returned to work after two days and was again declared physically qualified to continue his employment the following year. Id.

The medical records of his chiropractic treatment include periodic adjustments to cure misalignment of his cervical and lumbar spine, generalized low back discomfort with occasional numbness in his left leg and stiffness in his cervical spine. Id. X-rays in 2005 indicated spondylosis and uncovertebral arthrosis at C5-6 and spondylosis and apophyseal

joint arthrosis from the L1-2 through L5-S1 levels. Id. Notes reflect that Plaintiff was doing well in his care and was not experiencing any tingling in his legs, but suffered a slight exacerbation after taking a 12-14 hour drive. Id. Defendant's medical department again confirmed that Plaintiff was medically qualified without restrictions on July 25, 2005. Id.

A comparison of Plaintiff's current medical records with those from his 1991 treatment indicated to Dr. Schoedinger that Plaintiff's lumbar spine degenerative condition had progressively worsened. Id., at ¶ 8. The symptoms related to the herniated disc sustained at that time resolved to the point that Plaintiff's daily living and ability to perform work activities without restriction were not compromised. Id. A review of Plaintiff's job duties also indicated to Dr. Schoedinger that his work activities placed high impact loads and forces on his spine over the course of his lengthy railroad career more than sufficient to cause, at least in part, the advanced degenerative conditions and ruptured discs. Id. Dr. Schoedinger then noted that he has not seen any evidence to support a hereditary predisposition to degenerative changes in Plaintiff, quantifying the degree of any contribution it could play in this case as minor. Id. Plaintiff's weight was determined to be a contributing factor, but was quantified to be minor in relation to his lumbar spine injuries and not significant in relation to his cervical spine injuries. Id. Based on his experience and the evidence of record, Dr. Schoedinger concluded that the activities Plaintiff engaged in other than work (e.g., golf, riding his motorcycle, mowing) were no-load, no-impact activities that would not have played any appreciable role in the development of his degenerative conditions and ruptured discs. Id. Any forces to his spine that he experienced as a result of these occasional activities would have been minimal compared to the high forces that he experienced every day as a result of his work for the railroad. Id.

While it is not possible to state with a reasonable degree of medical certainty what percentage of Plaintiff's spine condition was attributable to normal aging, his prior injury, his non-work activities, hereditary predisposition, or his cumulative exposures in his 35 years of working for the railroad, Dr. Schoedinger's experience and the record in this case compels his conclusion that Plaintiff's lumbar and cervical spine injuries are causally related, in part, to his longstanding work environment, which has placed significant stresses and impacts imposed by that environment on his neck and low back superimposed on the normal degenerative processes that would otherwise be expected. Id. Furthermore, he opines that Plaintiff's work and other activities of life have caused an aggravation of his previously diagnosed lumbar spine injury sustained in 1991. Id.

Dr. Schoedinger basis his opinions on review of numerous epidemiological studies supporting the proposition that individuals exposed to repetitive stresses develop degenerative changes at a more rapid rate. Id., at ¶ 9. Several of these studies specifically involved railroad employees working as engineers, conductors, brakemen, and switchmen. Id.

Dr. McMullin's affidavit similarly expands upon the factual basis for his opinions. He states that over his years of practice, he has provided treatment to numerous railroad brakeman/conductor employees for both traumatic injuries and degenerative conditions that have developed over time. (McMullin Affidavit at ¶ 3) During his initial consult with Plaintiff, Plaintiff described the type of heavy labor that he had been doing for years with the railroad, including walking on ballast, pulling pins, and other work activities that Dr. McMullin was "generally familiar with" from his treatment of railroad employees over the years and the information they have provided about their daily employment tasks. Id., at

¶ 4. Dr. McMullin has reviewed job descriptions for a conductor working for Defendant and is aware that the work of such an employee involves operating track switches to move segments of tract, operating various devices, tools, and equipment, applying handbrakes, frequently lifting/carrying up to 50 pounds, occasionally lifting/carrying up to 100 pounds, walking on uneven ground, mounting and dismounting equipment while moving and stationary, and working for prolonged periods of time.  Id.

Dr. McMullin has now reviewed Plaintiff's deposition testimony and is aware of the statements contained therein.  Id., at ¶ 5.  Plaintiff has been employed by the railroad since 1971, working as a switchman, brakeman, and conductor in Illinois.  Id.  He worked 10-12 hours per day, six days per week, with his work being split fairly evenly between road work and work in the rail yard, which was more physically demanding because it required him to be on his feet all day, walking, throwing switches, and pulling pins.  Id.  During his employment, Plaintiff walked on oversized ballast, threw switches that were hard to manually operate, and performed tasks that made him slip and slide due to the muddy ground conditions.  Id.  Plaintiff denies having experienced any acute, traumatic injury to his knees while working for the railroad, but repeatedly encountered walkways that were in poor condition, oversized ballast, working in the mud, working in ice and snow, and switches that required tugging to throw.  Id.

Outside of work, Plaintiff plays golf once or twice a week, riding in a cart on the course.  Id.  He rides his motorcycle about once a week and shares lawn care duties with his girlfriend.  Id.

Dr. McMullin has reviewed Plaintiff's medical records and documents from his railroad medical and personnel files.  Id., at ¶ 6.  There is no indication in the records that

Plaintiff ever received treatment for symptoms on knee pain or injury prior to seeing Dr. McMullin in September 2006.  Id.  Rather, with the exception of his short absence after injuring his lumbar spine in 1991, he was regularly deemed to be physically qualified to perform the position of a brakeman/conductor without restrictions following examination by Defendant's medical professionals through July 2005.  Id.

Dr. McMullin diagnosed Plaintiff's condition as bilateral knee advanced chondromalacia of the patella, which is the softening and degeneration of the tissue/cartilage beneath the kneecap.  Id., at ¶ 7.  The diagnosis was confirmed by MRI, and Plaintiff underwent arthroscopic surgery on both knees in November 2006.  Id.  Dr. McMullin attributes this condition to an overuse syndrome that he has diagnosed and treated in individuals who perform physically demanding work tasks exposing the lower extremities and knee joints to regular stress, strain, impact, and loading, such as those performed by railroad employees.  Id.

It is Dr. McMullin's professional opinion, to a reasonable degree of medical certainty, that Plaintiff's knee condition is caused, at least in part, by his occupational work tasks performed over the years.  Id., at ¶ 8.  His knee problems are consistent with degenerative conditions that have developed gradually over time due to wear and tear in what Dr. McMullin classifies as "classic overuse syndrome."  Id.  The previously cited facts and requirements involved in Plaintiff's daily work activities, over the course of his lengthy employment with the railroad, placed high impact loads and forces on his lower extremities and knee joints sufficient to cause, at least in part, the advanced degenerative conditions for which Plaintiff was treated.  Id.  Although hereditary disposition can be a factor in this kind of degenerative changes, Dr. McMullin has not seen any evidence to support a finding

that hereditary disposition contributed to Plaintiff's condition.  Id.  Moreover, to the extent that such a relationship could have existed, it would only have been a minor contributing factor in the development of his advanced chondromalacia of the patella.  Id.  On the other hand, Dr. McMullin is of the opinion that Plaintiff's weight was a contributing factor in the development of his knee condition, but would have been a minor factor in relation to his physically demanding employment tasks.  Id.  There is no basis for concluding that any of Plaintiff's off-work activities, which were no-load, no-impact activities, played any appreciable role in the development of his condition, as any forces that he experienced in his lower extremities as a result of golfing, riding a motorcycle, or mowing his lawn would have been minimal in comparison to the high impact forces he experienced on a daily basis while working for the railroad, as supported in the medical literature.  Id.

Dr. McMullin basis his opinions on review of numerous epidemiological studies supporting the proposition that individuals exposed to repetitive stresses, loading, and impacts of their lower extremities will develop degenerative changes in their knees at an accelerated rate.  Id., at ¶ 9.  Several of these studies specifically involved railroad employees working as engineers, conductors, brakemen, and switchmen.  Id.

Defendant objects that the additional factual bases Plaintiff attempts to offer through the affidavits of Dr. Schoedinger and Dr. McMullin are not anything that was properly disclosed through the discovery process, but rather an unauthorized supplementation after reviewing records not previously reviewed prior to submitting their original reports.  As a result, Defendant argues that the affidavits are untimely and should not be considered.

The Court agrees that this is the type of factual information that was lacking in Plaintiff's prior expert disclosures.  In affording the opportunity to provide an offer of proof,

the Court was giving Plaintiff a chance to include existing information that may not have been included in the prior reports whether through oversight or lack of adequate preparation, some of which is reflected in the new affidavits. The Court did not contemplate that Plaintiff would provide the physicians with previously unreviewed evidence with the purpose of obtaining new opinions, some of which is also reflected in the affidavits. Thus, it is clear that Plaintiff's counsel has now done what should have been done previously in connection with the opinions of these treating physicians. The questions remains whether this second chance should be allowed.

The Court is not pleased with the situation it now faces, being forced to either deny Plaintiff access to relevant and probative information as a result of an arguably deficient performance by counsel or to vacate the trial schedule and reopen discovery to allow Defendant a reasonable opportunity to explore and challenge this new information. In fairness to all parties and in the interests of justice, the Court finds that the proper course is to allow the supplementation of the opinions of Plaintiff's treating physicians and reopen discovery for a period of 90 days. Defendant will be permitted to redepose Drs. Schoedinger and McMullin at the expense of Plaintiff's counsel, and will also be permitted to supplement its own experts' opinions or disclose a new expert if necessary. The current final pretrial conference and trial settings will be continued to new dates, and the Court will contact the parties in the near future to schedule these settings.

Defendant also seeks reconsideration of the Court's January 12, 2010, Order. Defendant first challenges the Court's ruling that there is a genuine issue of material fact precluding the entry of summary judgment on its statue of limitations defense. The Court found that the evidence of record viewed in the light most favorable to Plaintiff, including

the Court was giving Plaintiff a chance to include existing information that may not have been included in the prior reports whether through oversight or lack of adequate preparation, some of which is reflected in the new affidavits. The Court did not contemplate that Plaintiff would provide the physicians with previously unreviewed evidence with the purpose of obtaining new opinions, some of which is also reflected in the affidavits. Thus, it is clear that Plaintiff's counsel has now done what should have been done previously in connection with the opinions of these treating physicians. The questions remains whether this second chance should be allowed.

The Court is not pleased with the situation it now faces, being forced to either deny Plaintiff access to relevant and probative information as a result of an arguably deficient performance by counsel or to vacate the trial schedule and reopen discovery to allow Defendant a reasonable opportunity to explore and challenge this new information. In fairness to all parties and in the interests of justice, the Court finds that the proper course is to allow the supplementation of the opinions of Plaintiff's treating physicians and reopen discovery for a period of 90 days. Defendant will be permitted to redepose Drs. Schoedinger and McMullin at the expense of Plaintiff's counsel, and will also be permitted to supplement its own experts' opinions or disclose a new expert if necessary. The current final pretrial conference and trial settings will be continued to new dates, and the Court will contact the parties in the near future to schedule these settings.

Defendant also seeks reconsideration of the Court's January 12, 2010, Order. Defendant first challenges the Court's ruling that there is a genuine issue of material fact precluding the entry of summary judgment on its statue of limitations defense. The Court found that the evidence of record viewed in the light most favorable to Plaintiff, including

the need for regular chiropractic treatment on a monthly basis, Plaintiff's statement that what he experienced was more of an intermittent stiffness that he equated with getting old, and the lack of evidence indicating the magnitude or severity of the pain experienced by Plaintiff, promoted more than one objectively reasonable conclusion and would also require an assessment of Plaintiff's credibility. In seeking reconsideration, Defendant takes certain statements by Plaintiff out of context and ignores other statements in an attempt to infer a level of severity that would demonstrate constructive notice of his injury. Furthermore, with all due respect, it is not reasonable to summarily equate the fact that an individual is aware that he is sore or stiff after performing tasks that are physically demanding with the knowledge that the individual has suffered a serious spinal injury. Yet this is what Defendant urges the Court to do. This effort, as well as the attempt to rehash the arguments previously rejected on summary judgment, is insufficient to warrant reconsideration of this claim. The jury may well agree that a reasonable person in Plaintiff's position should have realized that he suffered more than a de minimus cumulative injury as a result of his work, but where the material facts underlying this determination are either in dispute or not adequately reflected in the record, it is the jury that must make such a determination at trial, and it would not be appropriate to grant summary judgment.

Defendant further challenges the Court's denial of its Motion for Summary Judgment on causation evidence and attempt to exclude the expert testimony of Tyler Kress, Plaintiff's ergonomics expert. Initially, the Court notes that the objection with respect to the causation evidence is now moot given the Court's rulings on Plaintiff's Motion to Reconsider. However, it is worth noting that contrary to Defendant's suggestion, the Court

did not authorize Kress, who is not a doctor, to provide testimony as to medical causation. Rather, the Court found that Kress was qualified to testify as an expert in ergonomics regarding the job tasks and working environment of railroad employees like Plaintiff and could provide more specific evidence concerning the job tasks performed by Plaintiff and risk factors to which he was exposed in his work for the railroad that could be considered in conjunction with medical testimony about the kinds of tasks that could have caused Plaintiff's injuries.

Defendant's remaining arguments constitute little more than a rehashing of its prior objections to Kress' methodology, which is not appropriate in a motion for reconsideration. Nor does the Court find it persuasive that another judge considering a motion attacking Kress' testimony in another case against the same Defendant reached a different result. Judge McCuskey reached his decision based on consideration of the facts and evidence in his case, and this Court did the same based on the facts and evidence in this case. As the Court has previously stated, each case must be resolved on its own facts, and as a result, it would be inappropriate to impose the kind of blanket ban on Kress' testimony sought in this case. The Court does not believe that Daubert's requirements were intended to be applied in such an inflexible manner under the circumstances.

Moreover, in cumulative injury cases, such as this, where injuries manifest themselves over many years of employment, it would be almost impossible for a plaintiff to ever produce expert testimony based on conducting the kind of strict, case-specific quantitative analysis demanded by Defendant. During their ongoing employment, such case-specific testing would appear as a practical matter to be within the control of the employer. While this kind of case-specific testing would be the gold standard for evidence

in cases like this, the Court rejects the suggestion that reliance on generalized studies addressing the same type of work that the evidence will show was performed by Plaintiff in this case, is so inherently unreliable as to bar the expert's opinion in its entirety. As the Court stated in its January 12, 2010, Order, such challenges go to the weight to be attributed to the testimony rather than its admissibility. Defendant's Motion to Reconsider is therefore denied.

## CONCLUSION

For the reasons set forth herein, Plaintiff's Motion to Reconsider [#58] is GRANTED, and Defendant's Motion to Reconsider [#56] is DENIED. The Court reopens discovery for a period of 90 days in accordance with the instructions contained in this Order, and the final pretrial conference and trial settings will be rescheduled accordingly. For the reasons stated in denying Defendant's Motion to Reconsider, Defendant's Motion to Stay [#65] is also DENIED.

ENTERED this 8th day of February, 2010.

s/ Michael M. Mihm
Michael M. Mihm
United States District Judge